# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF KENTUCKY
# COVINGTON DIVISION

IN RE

AMANDA MICHELLE MELCHER                                          CASE NO. 16-21536

DEBTOR                                                           CHAPTER 7

### MEMORANDUM OPINION AND ORDER REGARDING MOTION OF VICTORY COMMUNITY BANK TO DISMISS CASE FOR ABUSE

This matter is before the Court on Victory Community Bank's Motion to Dismiss Case for Abuse [ECF No. 25] and Debtor's Response [ECF No. 32] thereto. Creditor Victory Community Bank ("VCB") contends that Debtor's chapter 7 case is abusive and should be dismissed under § 707(b)(1).[1] Debtor concedes that the presumption of abuse arises under § 707(b)(2)(A), but she argues that her ineligibility for chapter 11 or 13 (because she is a "stockbroker") and her future financial outlook are "special circumstances" that rebut the presumption. The Court held an evidentiary hearing on July 18, 2017, and, having reviewed the record and being otherwise sufficiently advised, makes the following findings of facts and conclusions of law.

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and this Court is authorized to issue a final order adjudicating this matter.

Debtor has worked in the financial industry for fourteen years and holds series 6, 7, 63, and 66 financial securities licenses, as well as life and health insurance licenses. Fidelity Investments ("Fidelity") has employed Debtor for over six years. Fidelity provides Debtor with

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

office space, a computer, and a telephone line at no cost to her. She typically works at Fidelity's office during its office hours, Monday through Friday from 8:30 a.m. to 5:00 p.m.

Fidelity has approximately 45,000 employees, 55 of whom have the same job title and compensation structure as Debtor. As part of her job at Fidelity, Debtor provides financial advice to clients and solicits them to make investments. Clients reach Debtor by calling her direct telephone line and extension at Fidelity or by meeting with her in person. Based on their interactions with Debtor, clients make financial decisions such as whether to keep stock investments, create additional income through an annuity, or purchase life insurance. Debtor interacts with an average of five to six clients each work day and has approximately 1,000 clients in total, some of whom have worked with Debtor for a significant time.

Fidelity owns Debtor's client list and does not permit Debtor to freelance or otherwise work for herself. Debtor does not provide financial management, investment, or other professional services to any clients, other than in the course of her work for Fidelity. Although Debtor has access to all clients' accounts, they are legally titled to the client, individually, and/or to Fidelity. Debtor holds no clients' funds in her personal bank accounts.

Other than child and/or spousal support, Debtor receives all of her income from Fidelity. Fidelity sets Debtor's annual salary of $60,000 and allows her to earn paid vacation and sick leave. Debtor is also eligible to earn commission pay from Fidelity based on the dollar amount of financial products in which her clients invest. Debtor's goal is to generate $14 million in investment transactions in her clients' Fidelity accounts per month. Debtor earns a certain commission if she meets 100% of her goal, and she earns a higher commission if she meets 130% of her goal. Debtor has earned a commission from Fidelity every year since she became eligible in November 2013. Her gross annual income has not been less than approximately

$110,000 since 2014. Her 2017 gross income totaled $76,213.89 as of her June 16, 2017 pay date, which was the twelfth of twenty-six paychecks that Debtor anticipates receiving this year. Debtor received tax refunds of over $6,000 each year for calendar years 2014, 2015, and 2016.

Debtor filed her chapter 7 petition on November 28, 2016 ("Petition Date"). Debtor's scheduled secured and unsecured debts total $345,000 and $313,932.85, respectively. Debtor's petition states that her debts are primarily consumer debts and that she is not a sole proprietor of any business, including a stockbroker business as defined in § 101(53A). Debtor's Schedule I states that she is employed as an "investment consult [*sic*] / stockbroker" by Fidelity. [ECF No. 1, p. 28.]

Debtor voluntarily reported her bankruptcy filing to the Financial Industry Regulatory Authority, which listed Debtor's bankruptcy on her individual "BrokerCheck Report." Fidelity is listed as Debtor's employer on the BrokerCheck report, and Debtor asserts that Fidelity is monitoring her bankruptcy.

Debtor filed a Chapter 7 Statement of Current Monthly Income (Official Form 122A-1) and Chapter 7 Means Test Calculation (Official Form 122A-2) [ECF No. 11 ("Means Test")]. Debtor and VCB accurately stipulated as follows regarding Debtor's Means Test:

> 6. The annualized current monthly income of the Debtor exceeds the median family income in Kentucky for a family size of two. Specifically, line 12a of Official Form 122A-1 as filed with this Court by the Debtor reflects her "current monthly income" as being $9,570.83 (see ECF No. 11 at pg. 2). Debtor's annual income pursuant to line 12b of this form is $114,849.96.
>
> 7. Annual median family income for Debtor's state and household size of two at the time of the filing of the bankruptcy petition was $50,882.00.
>
> 8. Official Form 122A-2, as filed by the Debtor, confirms that a presumption of abuse arises in the Debtor's pursuit of a discharge under Chapter 7 of the Bankruptcy Code and as specifically stated in 11 U.S.C. §707(b)(2).

>   9. Based upon the Debtor's calculations in Official Form 122A-2 that she filed with this Court, Debtor's monthly disposable income is $1,785.44 (see line 39c of such form and ECF No. 11 at pg. 10).

[ECF No. 38, ¶¶ 6-9.]  Debtor answered "No" to the Means Test inquiry: "Do you have any special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative?  11 U.S.C. §707(b)(2)(B)."  [Means Test, ¶ 43.]

The Chapter 7 Trustee filed a Notice of Sufficient Assets, indicating that the payment of a dividend to creditors may be possible and setting a deadline for filing claims.  The Trustee informed Debtor that certain funds she has on deposit, as well as her 2016 tax refund, are subject to turnover.

## ANALYSIS

VCB seeks dismissal of Debtor's chapter 7 bankruptcy case for abuse pursuant to § 707(b)(1), which provides in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by . . . any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).  The parties stipulated that the presumption of abuse arises under § 707(b)(2)(A); thus, Debtor bears the burden of persuasion to rebut the presumption.  *In re Campbell*, No. 11-51573, 2012 WL 162287, at *4 (Bankr. E.D. Ky. Jan. 18, 2012) (citation omitted).

> [T]he presumption of abuse may only be rebutted by demonstrating *special circumstances*, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i) (emphasis added).   To establish "special circumstances," Debtor must itemize each additional expense or income adjustment and provide sworn documentation supporting such adjustments, as well as "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable."   11 U.S.C. § 707(b)(2)(B)(ii), (iii).

**A.    Debtor is Not a Stockbroker; Thus, Her Claimed Ineligibility for Alternative Relief is Not a Special Circumstance Rebutting the Presumption of Abuse.**

Debtor argues that her employment as a stockbroker, rendering her ineligible for chapter 11 or chapter 13 relief, constitutes a special circumstance that rebuts the presumption of abuse. Section 109 specifically excepts "stockbrokers" from eligibility for chapters 11 and 13, but not from chapter 7.   11 U.S.C. § 109(b), (d), and (e).   "Stockbroker" is defined in § 101(53A), under which "two criteria exist for a debtor to be classified as a stockbroker:   (1) the debtor must have customers, and (2) the debtor must be engaged in the business of effecting transactions in securities."   *WesBanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

Section 741(2), lodged in the Bankruptcy Code's "Stockbroker Liquidation" subchapter, defines "customer" for purposes of the stockbroker definition:

> (A) entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity--
>     (i)    for safekeeping;
>     (ii)   with a view to sale;
>     (iii)  to cover a consummated sale;
>     (iv)  pursuant to a purchase;
>     (v)   as collateral under a security agreement; or
>     (vi)  for the purpose of effecting registration of transfer; and

5

    (B) entity that has a claim against a person arising out of--
        (i)    a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
        (ii)    a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security;

11 U.S.C. § 741(2).

It has been uniformly held that "an employee[] who effects transactions in securities while acting on behalf of a principal-employer[] is not considered a stockbroker because that employee does not have a customer." 2-101 COLLIER ON BANKRUPTCY ¶ 101.53A (16th ed. 2017) (citing H.R. REP. NO. 95-595, 95TH CONG., 1ST SESS. 314 (1977); S. REP. NO. 95-989, 95TH CONG., 2D SESS. 27 (1978)). For example, in *In re Berry*,[2] the court found that a chapter 13 debtor employed as an account executive at Merrill Lynch was not a stockbroker under § 101(53A) because he acted not "as the principal or agent of the customer," but "as the employee of Merrill Lynch . . . advising Merrill['s] . . . customers as to the status of the stock market in general as well as the stocks of individual companies and effectuating the sale and purchase of customer[s'] stocks." *In re Berry*, 22 B.R. 950, 952 (Bankr. N.D. Ohio 1982). "Although in the course of his duties at Merrill[] Lynch . . . [the debtor] wishes to satisfy the company's customers with his skills and knowledge of transactions on the stock market, his ultimate responsibility for job performance and job satisfaction is with Merrill Lynch . . . not the customer." *Id.*; *see also In re Schave,* 91 B.R. 110 (Bankr. D. Colo. 1988) (debtor employed by First Eagle, Inc. was not a stockbroker because he acted as company's agent and did not have his own customers); *In re Fassi*, No. 12-18655, 2013 WL 2190158 (Bankr. D. Colo. May 21, 2013) (debtors were not stockbrokers because they were agents of Centaurus Financial, Inc. and did not have their own customers).

---

[2] Although *Berry* was decided before the 1984 amendments to § 741(2), those technical amendments do not alter its logic, which is instructive in this case.

Debtor is not a "stockbroker" within the meaning of § 101(53A) because she is an employee of Fidelity and does not have her own customers. Although Debtor is responsible for advising clients regarding investment options including stock transactions, which could be interpreted as "effecting transactions in securities," she does so as a Fidelity employee. Debtor is paid by Fidelity, not by any particular client. Fidelity provides Debtor an office, owns her client list, and does not permit Debtor to provide professional services outside of her employment. Clients entrust their funds to Fidelity, not Debtor. Debtor holds no client funds in her personal bank account; rather, all client funds are held in accounts titled in their own names or in Fidelity's name. Debtor may have access to clients' accounts for the purpose of initiating investment actions as they direct, but she is not the entity holding the clients' deposited funds. "The essence of the relationship between a broker or dealer and [her] customers is a deposit relationship." H.R. REP. No. 95-595, at 265. There is no such relationship between Debtor and her clients. The clients are Fidelity's customers; Debtor is Fidelity's employee.

Debtor's reliance on *In re Hayter*, No. 09-20448-TLM, 2010 WL 1258162 (Bankr. D. Id. Mar. 26, 2010) does not support her position. *Hayter* addressed whether a debtor who had identified himself as a "stockbroker" on Schedule I could later prove that he was not a "stockbroker" under the Code to be eligible for chapter 13. The court simply found that the debtor did not meet his burden of proof. Hayter failed to indicate how clients' money was deposited and failed to show that he was merely an employee of GBS Financial Corporation because he provided no substantive evidence regarding his relationship with GBS. That is not the case here. The evidence clearly shows Debtor's employee relationship with Fidelity and her interactions with Fidelity's clients and their funds. Debtor does not have "customers" of her own.

7

Moreover, Debtor's case is not proceeding under the special stockbroker liquidation (Subchapter III) provisions of chapter 7.[3]  11 U.S.C. §§ 741-784.  "Subchapter III [of chapter 7] exists because, as a policy matter, Congress determined that 'stockbrokers,' as defined in [§ 101(53A)] have 'unique problems' that cannot be effectively addressed in a chapter 11 or non-subchapter III chapter 7 case."  6-740 COLLIER ON BANKRUPTCY ¶ 740.01 (citing S. REP. NO. 95-989, at 3 (1978); H.R. REP. NO. 95-595, at 265 (1977)).  Presumably, if Debtor is a "stockbroker," Subchapter III of chapter 7 would apply to this case.  The Court questioned Debtor's counsel about the application of Subchapter III at the hearing, and counsel expressed his opinion that Debtor could be a stockbroker for eligibility purposes, but not be subject to the special stockbroker liquidation provisions of Subchapter III.  The Court can discern no basis for this position, but need not analyze it further because the Court holds that Debtor is not a "stockbroker" under § 101(53A).  Accordingly, Debtor is not precluded from eligibility for chapter 11 or chapter 13.  The Court does not reach the issue of whether ineligibility constitutes a special circumstance sufficient to rebut the presumption of abuse under § 707(b)(2)(B).

**B.    Debtor Has Not Demonstrated "Special Circumstances" Regarding Her Finances that Rebut the Presumption of Abuse.**

Debtor asserts that she has special financial circumstances sufficient to rebut the presumption of abuse under § 707(b)(2)(B).  She argues that her future income is not guaranteed and that the Chapter 7 Trustee will distribute assets to her creditors in this chapter 7 case that will essentially satisfy chapter 13's requirements.  Debtor claims that her future income may

---

[3] Subchapter III of chapter 7 of the Bankruptcy Code is titled "Stockbroker Liquidation."  The Securities Investor Protection Act of 1970 ("SIPA") and what "would become subchapter III arose out of the so-called 'paperwork crisis' of the late 1960s, which led to the demise of hundreds of broker-dealers and undermined public confidence in the securities markets."  6-740 COLLIER ON BANKRUPTCY ¶ 740.01 (16th ed. 2017).  SIPA "was designed to protect public customers in the event their broker-dealers encountered financial difficulties which prevented them from fulfilling their obligations to such public customers," and "Subchapter III of Chapter 7 provides these special protections for customers of stockbrokers."  *In re Schave*, 91 B.R. 110, 112 (Bankr. D. Colo. 1988) (citation omitted).

8

decrease because her annual compensation, which is largely commission based, is not guaranteed.   Yet, she has earned commission every year since she became eligible, and her gross annual income has been at least $103,975 since 2014, which is more than double the $50,882 annual median family income for Debtor's state and household size of two as of the Petition Date.   Debtor avers that the Department of Labor's new fiduciary rules will change her compensation structure, but she did not provide any information quantifying the potential change in her future earnings, aside from a news article about the financial industry as a whole and a Fidelity article describing the results of a financial advisor survey.   She states that Fidelity advised that her bankruptcy is a problem that must be quickly resolved, argues that she would be at continued risk of losing her job if she commences a chapter 13, and concludes that another investment company would not hire her because of her bankruptcy, all without citing any evidence aside from a passing reference to "numerous publications and websites that reveal that a stockbroker seeking a job with a recent bankruptcy on their record might as well stop looking before they start."   [ECF No. 41, p. 7.]

These unquantified concerns about the future do not satisfy Debtor's burden to demonstrate "special circumstances" that require a downward adjustment to her income on her Means Test.   Debtor has offered no legal authority for her position, nor has she provided an itemization or detailed explanation of the special circumstances that make her claimed income adjustment necessary and reasonable as required by § 707(b)(2)(B)(ii).   Moreover, as noted earlier, Debtor stated under penalty of perjury on her Means Test that she had no "special circumstances" that justify adjustments of current monthly income within the meaning of § 707(b)(2)(B).   Debtor provides no meritorious basis to depart from that unamended position.

Similarly, Debtor's contention that the presumption of abuse is rebutted because the Chapter 7 Trustee may distribute assets that somehow satisfy chapter 13 requirements is without merit. This circular argument is nonsensical—every chapter 7 case that distributes assets will meet the hypothetical chapter 13 requirement under § 1325(a)(4) that a chapter 13 plan must distribute as much as creditors would receive in chapter 7. That does not present a "special circumstance" rebutting the presumption of abuse.

## CONCLUSION

In the face of a challenge to her presumptively abusive chapter 7 filing, Debtor argues that she is a stockbroker, yet not enough of a stockbroker to qualify for the stockbroker provisions of chapter 7. She is not a stockbroker; at best, she is an employee of a stockbroker. Neither her concerns about her employment/future income, nor the distribution of her non-exempt assets in this chapter 7 proceeding are special circumstances within the meaning of § 707(b)(2)(B). Debtor has failed to rebut the presumption of abuse.

Based on the foregoing, IT IS HEREBY ORDERED that Debtor shall have fourteen days from the date hereof to convert her case to another chapter or it will be dismissed without further notice or hearing.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Friday, September 08, 2017
(tnw)