**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

IN RE

AMANDA MICHELLE MELCHER                              CASE NO. 16-21536

DEBTOR                                                              CHAPTER 13

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS**

Debtor Amanda Michelle Melcher's confirmed chapter 13 plan required her to pay the Chapter 13 Trustee one-third of her annual gross income above $120,000. Since 2019, Debtor sent payments to Trustee based on her understanding of this requirement. In February 2021, Trustee's online plan payment and accounting system reflected that Debtor was current on her payments. But six months later, Trustee reversed her position. She filed a motion to dismiss Debtor's case in August 2021 asserting that, based on Trustee's interpretation of the term "gross income," Debtor did not pay in accordance with her confirmed plan, amounting to a material default under the plan [ECF No. 116 (the "Motion")].

At the most recent hearing on Trustee's Motion in June 2022, the parties agreed that the dispute could be resolved on the record. They tendered joint stipulations of fact and affidavits supporting their respective positions [ECF Nos. 133, 134, 135]. Trustee contends that Debtor, whose plan term is almost complete, is delinquent in her plan payments by nearly $10,000 based on insufficient excess income payments in 2019, 2020, 2021, and 2022. As explained below, Trustee's Motion is barred by the equitable doctrine of laches and will be denied.

**I.       Procedural Background and Findings of Fact.**

Debtor's Amended Plan was confirmed on April 3, 2018 [ECF No. 92 (the "Plan")]. The Plan has a 60-month term which is scheduled to end by October 2022. Prior to confirmation,

disputes arose between Debtor and Trustee concerning Debtor's scheduled income and expenses. As a result, the parties negotiated a nonstandard provision for the Plan which provides:

> [I]n February of each year, the Debtor will provide to the Trustee a copy of her year end 1099 or W-2 showing her income for the calendar year. The Debtor shall pay to the Trustee an amount equal to one third of gross income in excess of $120,000 and shall make said payment to the Trustee no later than April 30 of each calendar year of the plan. If Debtor's income adjusts below $120,000 per year then she may file amended Schedules I and J and adjust her payments to accurately reflect her income and expenses.

[Plan ¶ VII.B.] The parties agree this provision requires Debtor to pay one-third of her annual gross income over $120,000 to Trustee ("Excess Income Payment") but disagree how to calculate that amount.

Debtor's first Excess Income Payment was due in 2019 for tax year 2018. As Trustee has not advised otherwise, Debtor presumably timely provided Trustee her 2018 W-2. The parties stipulated Debtor paid Trustee an Excess Income Payment in 2019 of $1,145.10. Debtor calculated this amount using her income reported in Box 1 of her 2018 W-2 ($123,470.44), subtracting $120,000, and multiplying the difference ($3,470.44) by .33. [ECF No. 133 ¶ 22.][1]

According to Debtor's affidavit, after she made the first Excess Income Payment in 2019, Debtor's counsel, Trustee's counsel, and a creditor's counsel communicated for several months concerning whether the payment was properly calculated "with the ultimate, and apparent, conclusion being that the amounts paid by the Debtor were sufficient to consider her current on plan payments[.]" [*Id.* ¶ 28.] With Debtor's W-2 in hand, if Trustee felt that Debtor had miscalculated the Excess Income Payment, Trustee could have raised it with the Court. No party

---

[1] Multiplying a figure by .33 is not the same as calculating one-third of that figure. But Trustee does not raise this as an issue.

presented the issue to the Court in 2019, nor has Trustee provided any evidence that the 2019 discussions concluded differently.

Believing her first Excess Income Payment, made in 2019, was sufficient, *i.e.*, calculated correctly, Debtor paid her second Excess Income Payment in 2020 using the same calculation method.[2] Trustee did not move the Court in 2020 to find that Debtor made an inappropriate Excess Income Payment, nor did Trustee raise a concern with Debtor.

Debtor had to pay her Excess Income Payment for tax year 2020 by April 30, 2021. Before this payment was due, as of February 2021, Trustee's online records system reflected that Debtor was not only current on her plan payments but was slightly ahead. [*Id*. ¶ 23, p. 12 (chart showing "Breakdown for Combined Schedules" at line 41).] Debtor made her 2020 Excess Income Payment based on the same calculation Debtor had used in the two prior years.

Trustee did not immediately raise the sufficiency of Debtor's Excess Income Payment for 2020 with the Court. Rather, Trustee filed the Motion four months later on August 26, 2021, in month 47 of Debtor's 60-month plan term. Trustee contended Debtor's plan payment delinquency totaled $5,303.60 due, at least in part, to insufficient Excess Income Payments.

Trustee opted to continue her Motion generally to attempt a negotiated resolution, which ultimately failed. By April 30, 2022, Debtor paid her Excess Income Payment for tax year 2021 using the same calculation method employed in the three prior years, thereby attempting to comply with her Plan and maintaining the status quo. Trustee waited until after Debtor made this last payment before re-noticing the Motion to be heard in June 2022—ten months after

---

[2] The parties stipulated that Debtor made a $2,032.10 payment in 2020. Trustee contends an Excess Income Payment was not made in 2020. Trustee applied Debtor's $2,023.10 payment toward a monthly plan payment delinquency. Debtor's affidavit, however, explains that her payment consisted of the $190.42 Excess Income Payment and a portion of her tax refund also due to Trustee under her Plan. Regardless of how Trustee chose to apply the payment, Debtor's affidavit is uncontradicted that she paid the 2019 Excess Income Payment using the same calculation as the year prior.

3

Trustee filed the Motion—to have the Court to rule on the dispute. Prior to the hearing, Debtor filed a response to the Motion [ECF No. 126] and Trustee filed a reply [ECF No. 127].

**II.      Jurisdiction.**

This Court has jurisdiction over this proceeding. 28 U.S.C. § 1334(a). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

**III.     Discussion.**

The parties' papers explain their disagreement about the term "gross income" and its application to the Plan's requirement that Debtor make Excess Income Payments. Trustee defines "gross income" as the amount reported in Box 5 of Debtor's W-2 and contends that this understanding of the term is consistently applied to chapter 13 plans in this district. Debtor defines "gross income" as the amount in Box 1 of her W-2 and contends that she made Excess Income Payments to Trustee for several years based on this definition without objection. For purposes of the payment calculation as applied in this case, defining gross income based on the figure in Box 5 rather than Box 1 would result in a higher Excess Income Payment in each year because, unlike Box 1, the amount reported in Box 5 includes Debtor's elective retirement contributions.

The Court does not need to decide which calculation or interpretation of gross income is correct. The doctrine of laches prevents Trustee from asserting that Debtor's case should be dismissed based on the Excess Income Payments Debtor has made.

When there has been an "inexcusable delay that causes prejudice to the" non-movant, the doctrine of laches bars the movant's action. *Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 615 (6th Cir. 2013). "'Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *In re*

4

*Stubbs*, 565 B.R. 115, 126 (B.A.P. 6th Cir. 2017) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). Debtor bears the burden to establish that laches is applicable. *McKeon Prod., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 742 (6th Cir. 2021); *In re Pickett*, No. 08-32916, 2014 WL 1089804, at *3 (Bankr. N.D. Ohio Mar. 19, 2014) (considering but rejecting a debtor's argument that laches barred a chapter 13 trustee from objecting to the debtor's discharge); *In re Harwood*, 519 B.R. 535 (Bankr. N.D. Cal. 2014) (concluding that a debtor may argue that laches bars a chapter 13 trustee's motion to dismiss a bankruptcy case). Although Debtor did not use the term laches in her papers, she raised the doctrine's principles.

The bankruptcy court's decision denying a motion to dismiss in *In re Carter* is helpful here. 638 B.R. 379 (Bankr. N.D. Ill. 2022). In *Carter*, the debtor's chapter 13 plan was confirmed in 2017 and the confirmation order unambiguously required the debtor to turn over his tax return and tax refund each year to the chapter 13 trustee. When the debtor failed to do so in 2018, the trustee moved to dismiss the case. The debtor subsequently provided his tax return, and the trustee withdrew the motion to dismiss even though the debtor had not turned over his tax refund. The same occurred the following year, but the trustee's second motion to dismiss was silent concerning the debtor's tax refund and only mentioned the debtor's failure to provide his tax return. After the debtor provided his tax return, the trustee withdrew the second motion. In 2020 and 2021, the debtor voluntarily provided his tax returns —but not his tax refunds—and the trustee did not file a motion to dismiss. The trustee waited until the eve of the plan's 60th month to file a motion to dismiss based on the debtor's failure to turn over tax refunds as required. At that point, the debtor did not have time to modify the plan or the ability to pay the delinquency.

The debtor in *Carter* argued that laches prevented the chapter 13 trustee from enforcing a requirement in the plan confirmation order at the eleventh hour after failing to do so for several years. The court agreed, holding that the trustee's "oversight in waiting to enforce [the provision] until the end of the Plan was both unreasonable and inexcusable" causing material prejudice to the debtor. *Id*. at 394-95. The trustee's motion to dismiss was, thus, denied because the debtor satisfied both elements of the laches defense.

Here, the record establishes that the doctrine of laches applies to bar Trustee's motion to dismiss. The first element of laches is met because Debtor has demonstrated that Trustee lacked diligence in raising and pursuing this issue, amounting to an inexcusably long delay. *Stubbs*, 565 B.R. at 126; *Cornerstone Cmty. Bank*, 733 F.3d at 615. After Debtor's Plan was confirmed in 2018, Debtor used the same calculation (using Box 1 as gross income) to make Excess Income Payments in 2019, 2020, 2021, and 2022 and provided her W-2 to Trustee each year so that Trustee could calculate and confirm the payment due. Although the parties discussed the payment calculation in 2019 after the first Excess Income Payment, those discussions concluded with Debtor's payment being considered sufficient and without Trustee bringing the issue to the Court. In addition, after the 2019 and 2020 Excess Income Payments were made, Trustee's accounting records reflected that Debtor was current in her payments and did not support Trustee's determination that previously made Excess Income Payments were insufficient. If Debtor's payment calculation was at odds with the Plan's requirements, then it was not diligent for Trustee to delay raising a differing interpretation of this Plan provision until August 2021. The delay worsened, and became "both unreasonable and inexcusable," when Trustee did not seek a substantive hearing on the Motion until month 57 of the 60-month plan.

6

Debtor also satisfies the second element of laches because Trustee's lack of diligence and inexcusable delay prejudices Debtor. During the period of Trustee's inaction, Debtor's alleged default increased from $5,303.60 to $9,894.91 (the amount due, according to Trustee's affidavit, using Trustee's calculation [ECF No. 135]). Similar to *Carter*, if the Court were to accept Trustee's interpretation of the term gross income, and conclude Debtor improperly calculated her Excess Income Payments in 2019, 2020, 2021, and 2022 resulting in a payment deficiency, Debtor would now have only a few weeks left in the Plan term to pay $9,894.91 to Trustee, also prejudicing Debtor.

This case, however, diverges in an important way from *Carter*. In *Carter*, the debtor failed to comply with the plan confirmation order's clear requirement to provide the trustee with his tax refund. It is axiomatic that debtors bear an "important responsibility to adhere to the terms of [a] confirmed plan." *In re Scholl*, 605 B.R. 163, 177 (Bankr. S.D. Ohio 2019); 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor . . . ."). Nothing herein should be read to suggest debtors will or should be excused from performing under the clear terms of their chapter 13 plan when a trustee fails to timely object. Here, Debtor is not in clear violation of her Plan. Rather, a non-frivolous, legitimate dispute exists as to whether Debtor has complied with her Plan. Regardless of which interpretation of "gross income" is correct, the Court agrees with Debtor that a ruling for Trustee at this point in the case would prejudice Debtor because Trustee would have then "create[d] a situation where the [Debtor is] simply unable to catch up [her] payments" before the expiration of the 60-month plan term. [ECF No. 133.]

IV.    Conclusion.

This decision should not be broadly construed. The peculiar facts presented here compel the Court's decision. Trustee failed to move the Court concerning the Excess Income Payment provision until month 47 of Debtor's 60-month Plan term. By this point, Debtor had made three years of Excess Income Payments calculated the same way and had been led to believe that Trustee accepted her calculation method. After Trustee filed the Motion, she did not pursue a substantive hearing on it until month 57 of the Plan term, and she then advised that Debtor's payment delinquency had nearly doubled to almost $10,000. Trustee slept on her right to enforce her interpretation of the non-standard plan provision regarding the calculation of Debtor's Excess Income Payments. For the foregoing reasons, IT IS ORDERED that Trustee's Motion [ECF No. 116] is DENIED.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Tuesday, August 30, 2022
(tnw)